UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| EMMA M. ADAMS, | CASE NO. 1:12CV2338 |
| Plaintiff, | JUDGE DAN A. POLSTER |
| v. | Magistrate Judge George J. Limbert |
| CAROLYN COLVIN[1], COMMISSIONER OF SOCIAL SECURITY, | **REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** |
| Defendant. | |

Emma M. Adams ("Plaintiff") seeks judicial review of the final decision of Carolyn Colvin ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). ECF Dkt. #1. For the following reasons, the undersigned recommends that the Court AFFIRM the Commissioner's decision and dismiss Plaintiff's complaint in its entirety with prejudice.

## I.   PROCEDURAL AND FACTUAL HISTORY[2]

The record shows that Plaintiff previously applied for DIB and SSI on September 20, 2007 and was denied benefits on April 17, 2008. ECF Dkt. #12 at 82-83, 90-94. She did not appeal the determination that she was not disabled. *Id*. at 46. On October 5, 2009, Plaintiff filed applications for DIB and SSI, alleging disability beginning April 18, 2008 due to agoraphobia, claustrophobia, depression and being "suicidal." *Id*. at 222. The SSA denied Plaintiff's applications initially and on reconsideration. *Id*. at 99-114. Plaintiff filed a request for an administrative hearing and on November 29, 2011, an Administrative Law Judge ("ALJ") conducted an administrative hearing. *Id*. at 35, 129. At the hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). *Id*. at 35.

---

[1]On February 14, 2013, Carolyn W. Colvin became the acting Commissioner of Social Security, replacing Michael J. Astrue.

[2] The undersigned notes that Plaintiff provides no procedural history or medical history in her brief on the merits.

On December 16, 2011, the ALJ issued a decision denying benefits. ECF Dkt. #12 at 16-28. Plaintiff filed a request for review of the decision, but the Appeals Council denied the request. *Id*. at 1-12.

On September 18, 2012, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. On February 19, 2013, Plaintiff filed a brief on the merits. ECF Dkt. #14. On April 5, 2013, Defendant filed a brief on the merits. ECF Dkt. #15. On April 19, 2013, Plaintiff filed a reply brief. ECF Dkt. #16.

## II. SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION

In his decision, the ALJ determined that Plaintiff suffered from depressive disorder and anxiety disorder which qualified as severe impairments. ECF Dkt. #12 at 18. The ALJ next determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings"). *Id*. at 20. He concluded that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the limitations that Plaintiff could not perform tasks requiring more than superficial interaction with the public or coworkers. *Id*. at 21.

Based upon this RFC and the testimony of the VE, the ALJ found that Plaintiff could return to her past relevant work as a machine tender, an assembler and a newspaper delivery person. ECF Dkt. #12 at 26. He also alternatively found that Plaintiff could perform jobs existing in significant numbers in the national economy, including the representative occupations of a quality assurance visual inspector, work order clerk and laundry worker. *Id*. at 27.

## III. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to DIB and SSI. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and

>   > 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));
>
>   4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));
>
>   5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV.   STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011), quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (citation omitted). An ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (citations omitted). The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v.*

*Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997).

**V.     ANALYSIS**

    **A.     MOTION TO REOPEN PRIOR APPLICATION AND AMEND ONSET DATE**

Plaintiff mentions in her brief that the ALJ failed to rule on the oral motion her counsel made at the hearing to reopen her prior social security applications and to amend her disability onset date. ECF Dkt. #14 at 1 and n.1. The undersigned recommends that the Court find that it lacks jurisdiction to review the ALJ's implied decision not to reopen her prior applications. Additionally and/or alternatively, the undersigned recommends that the Court find that Plaintiff fails to present any evidence or argument beyond this one sentence and thus she fails to present a colorable constitutional claim or good cause for the Court to review these issues.

When an ALJ is presented with an application for social security benefits after a claimant's prior application has been denied, he must determine the impact of the first decision upon his decision. The social security regulations allow for the reopening of DIB and SSI claims in certain circumstances and within applicable time limits. *See* 20 C.F.R. §§ 404.988, 416.1488. The relevant time limits applicable in this case are that Plaintiff had to request reopening of her prior DIB claim within four years of the date of the notice of the initial determination of that claim and within two years of the date of the notice of the initial determination of her SSI claim. *See* 20 C.F.R. §§ 404.988, 416.1488. Both of these relevant reopening regulations also require that a claimant prove that good cause exists for the reopening. *Id.* The regulations define "good cause" as existing when (1) new and material evidence is furnished, (2) a clerical error was made, or (3) the evidence considered in making the determination or decision clearly shows on its face that an error was made. 20 C.F.R. §§ 404.989, 416.1489.

"Generally, federal courts lack jurisdiction to review an administrative decision not to reopen a previous claim for benefits." *Swartz v. Barnhart*, 188 Fed. App'x 361, 370 (6th Cir. 2006), citing *Califano v. Sanders*, 430 U.S. 99, 107-109, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977)(42 U.S.C. § 405(g) does not authorize judicial review of alleged abuses of agency discretion in refusing to reopen claims for social security benefits because the statute restricts judicial review to final decisions of the Commissioner made after a hearing and a petition to reopen a prior final decision may be denied by

the Commissioner without a hearing). The only exception in which courts may review such a decision is if the plaintiff challenges the denial of a request to reopen on constitutional grounds. *Id*.

Since Plaintiff fails to present any constitutional grounds upon which to challenge the ALJ's decision not to reopen her previous applications, the undersigned recommends that the Court decline review of this issue based upon a lack of subject matter jurisdiction. Not only does Plaintiff fail to present any constitutional grounds upon which to challenge the ALJ's decision not to reopen her prior applications, she fails to provide any legal support, argument or analysis on the issue of reopening. Plaintiff merely mentions the ALJ's failure to rule on her motions in one sentence of her merits brief and does not present the issues as assertions of error. She merely states that in the procedural history sentence entitled "Alleged Onset Date" that the ALJ failed to rule on her requests. ECF Dkt. #14 at 1, n. 1. This failure to present any legal support, argument or evidence to support reopening is also fatal to her claim as "it is not the role of this Court to formulate the claimant's argument." *See McKinney v. Colvin*, No. 12-cv-162-KKC, 2013 WL 5468505, at *5 (E.D. Ky. Sept. 30, 2013)(citing *Hollon ex rel. Hollon v. Comm'r of Soc. Sec*., 447 F.3d 477, 490–91 (6th Cir. 2006) and finding claimant's assertion of ALJ error in denying her request to reopen prior SSI application without merit due to her failure to present evidence or argument developing her assertion)).

Finally, even if the Court decides to review these issues as assertions of error, the undersigned recommends that the Court find no merit to them. First, the undersigned notes that while Plaintiff was within the applicable time frame to request reopening her prior DIB claim, she was beyond the time for requesting reopening of her prior SSI claim. The date of notice of the denial of both her prior DIB and SSI applications was April 17, 2008 and she informed the ALJ at the instant hearing held on November 29, 2011 that she did not appeal the denials of these applications. ECF Dkt. #12 at 45-46, 90-96. Plaintiff's counsel thereafter orally requested that the ALJ reopen Plaintiff's prior applications and amend her onset date from April 18, 2008 to January 3, 2007. *Id*. at 40. The ALJ said "okay" and aided Plaintiff at the hearing by informing her that she had alleged an onset date of January 3, 2007 on the prior applications. *Id*. Plaintiff therefore met the four-year window for requesting reopening of the prior DIB claim, but it was three years between the date of the notice of the denial of her SSI claim on April 17, 2008 and the request for

reopening at the hearing on November 29, 2011. Thus, Plaintiff's request for reopening was untimely for her prior SSI application.

Second, while the ALJ did not explicitly deny Plaintiff's motion to reopen in his decision, the ALJ did not review the medical evidence concerning her prior applications or otherwise indicate in any way that he was reopening the prior claims. In *Gay v. Commissioner of Social Security*, No. 12-1653, 520 Fed. App'x 354, 2013 WL 1316130, at *4 (6th Cir. Apr. 2, 2013), unpublished, the Sixth Circuit held that remand of a social security case was required when the ALJ determining a second application for benefits failed to indicate whether he had reopened a prior decision denying benefits. The Court held that:

> If an ALJ intends to reopen prior decisions, he or she should say so, say why, and cite the appropriate regulation that permits reopening. If an ALJ intends instead to adjudicate only the subsequent period in light of changed circumstances, he or she should make this approach clear and cite the appropriate cases and acquiescence rulings. Regardless of which path the ALJs take, they must clearly state their approach. Since in this case the ALJ's approach was not clear, we remand for clarification.

*Id*.

In the instant case, the ALJ acknowledged the requests of Plaintiff's counsel at the hearing to reopen the determination on Plaintiff's prior applications and his request to amend the onset date for the instant applications. ECF Dkt. #12 at 40. Despite this acknowledgment, the ALJ's decision did not contain a ruling on the motion to reopen or any indication of the request for an amended onset date. Defendant offers no explanation for these omissions and makes no mention of these issues in her brief on the merits.

However, unlike the ALJ in *Gay*, the ALJ in the instant case did not make his approach unclear by discussing evidence from Plaintiff's prior applications or social security rulings regarding the prior period. Moreover, and most importantly, Plaintiff presents no law or analysis concerning this issue in her brief, except to state in her summary of the ALJ's decision that she requested reopening and amendment and the ALJ failed to rule on the request. ECF Dkt. #14 at 1. Accordingly, the undersigned recommends that the Court find no merit to Plaintiff's assertions of error.

For the foregoing reasons, the undersigned recommends that the Court find either that it lacks jurisdiction to rule on Plaintiff's request for reopening or that Plaintiff's assertions of error regarding the ALJ's failure to rule on her motion to reopen and amend her alleged onset date have no merit.

### B.     STEP FOUR ARGUMENTS

Plaintiff also asserts a number of errors that the ALJ allegedly made in his Step Four analysis concluding that she could return to her past relevant work. At Step Four of the sequential analysis, a claimant will be found not disabled if she is capable of performing her past relevant work as it was actually performed or as it is generally performed in the national economy. 20 C.F.R. § 404.1560(b)(2); 20 C.F.R. § 416.960(b)(2). The claimant bears the burden at Step Four of showing an inability to perform any past relevant work. *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980).

#### 1.     PSYCHOLOGICAL ASSESSMENTS

Plaintiff first asserts that the ALJ erred when he ignored the assessments of two state agency reviewing physicians who found that Plaintiff was limited to simple, routine, one to two step tasks and to a static environment with few changes. ECF Dkt. #14 at 5. Plaintiff cites to the assessments of Drs. Tishler and Chambly as support. *Id*.

On March 29, 2008, Dr. Tishler reviewed the evidence in Plaintiff's file and completed a psychiatric review technique form and mental RFC form for the agency. ECF Dkt. #12 at 459-476. He assessed Plaintiff's impairments from January 3, 2007 through March 25, 2008 under Listing 12.06 for anxiety-related disorders based upon the diagnosis of panic disorder with agoraphobia and concluded that she was mildly limited in her daily living activities, moderately limited in maintaining social functioning and in difficulties in maintaining concentration, persistence or pace, and had experienced no episodes of decompensation of an extended duration. *Id*. at 463-476. He concluded that Plaintiff had the ability to complete simple, routine, one-to-two step tasks, with occasional interaction with coworkers or the public. *Id.* at 462.

On January 21, 2010, Dr. Chambly reviewed Plaintiff's file for the agency and completed a psychiatric review technique form and mental RFC form. ECF Dkt. #12 at 563-580. She assessed Plaintiff's impairments from April 18, 2008 through January 21, 2010 under Listing 12.04 for affective disorders, Listing 12.06 for anxiety-related disorders, Listing 12.08 for personality

-7-

disorders and Listing 12.09 for substance addiction disorders. *Id*. at 567. She opined that Plaintiff's impairments mildly restricted her daily living activities, caused moderate difficulties in maintaining social functioning and in maintaining concentration, persistence or pace, and resulted in no episodes of decompensation of an extended duration. *Id*. at 577. In particular, she reviewed Dr. Tishler's assessment, a May 2007 psychological evaluation in the file, as well as October 2009 notes from Nord Counseling Center. *Id*. at 565. Dr. Chambly opined that Plaintiff would be limited to simple, repetitive tasks with limited contact with the general public and infrequent superficial contact with co-workers in a static environment with few changes. *Id.* She further noted that Plaintiff had problems with interactions with others and displayed problems with stress. *Id*.

An ALJ must adhere to certain standards when reviewing medical evidence in support of a claim for social security. Opinions from agency medical sources are considered opinion evidence. 20 C.F.R. § 416.927(f). The social security regulations mandate that "[u]nless the treating physician's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do work for us." 20 C.F.R. § 416.927(f)(2)(ii). More weight is generally placed on the opinions of examining medical sources than on those of non-examining medical sources. See 20 C.F.R. § 416.927(d)(1). However, the opinions of non-examining state agency medical consultants can, under some circumstances, be given significant weight. *Hart v. Astrue*, No. 3:08-cv-191, 2009 WL 2485968, at *8 (S.D.Ohio Aug.5, 2009), unpublished. This occurs because nonexamining sources are viewed "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act." Social Security Ruling ("SSR") 96–6p, 1996 WL 374180. Thus, the ALJ weighs the opinions of agency examining physicians and agency reviewing physicians under the same factors as treating physicians including weighing the supportability and consistency of the opinions, and the specialization of the physician. *See* 20 C.F.R. § 416.972(d), (f).

However, the Sixth Circuit Court of Appeals has held that the regulation requiring an ALJ to give good reasons for the weight given a treating physician's opinion does not apply to an ALJ's

-8-

failure to explain his favoring of several examining physicians' opinions over others. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 507, 2006 WL 305648, at **10 (6th Cir. Feb.9, 2006), unpublished. The *Kornecky* Court found that:

> While it might be ideal for an ALJ to articulate his reasons for crediting or discrediting each medical opinion, it is well settled that:
>
>> [a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party. Nor must an ALJ make explicit credibility findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts.

*Id.* The *Kornecky* Court reasoned that since it had previously held in other cases that an ALJ's refusal to even acknowledge the opinion of a treating physician could be harmless error, an ALJ's failure to discuss an agency physician's opinion could also constitute harmless error. *Id.* at 507, citing *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001); see also *Dykes ex rel. Brymer v. Barnhart*, 112 Fed. App'x 463, 467 (6th Cir.2004), citing *Heston*, 245 F.3d at 535–536.

Moreover, a claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(2), (3), 416.927(d)(2), (3). In crafting the RFC, an ALJ may adopt portions of a medical opinion and reject others. *See Neace v. Comm'r of Soc. Sec.*, No. 5:11–cv–00202–KKC, 2012 WL 4433284, at *8 (E.D.Ky. Sept.25, 2012)*; Deaton v. Comm'r of Soc. Sec.,* No. 1:10–cv–00461, 2011 WL 4064028, at *6 (S.D.Ohio Sept.13, 2011); *Carroll v. Comm'r of Soc. Sec.*, No. 1:09cv2910, 2011 WL 3648128, at *10 (N.D.Ohio Aug.18, 2011). *Diemer v. Comm'r of Soc. Sec.*, No. 2:12-cv-610, 2013 WL 3122246, at *9 (S.D. Ohio, June 19, 2013).

In the instant case, the ALJ did not mention Dr. Chambly or Dr. Tishler[3] by name. However, he did state that he had considered the medical opinions of the state agency psychological consultants and he cited to the page numbers of Dr. Chambly's opinion in the record. ECF Dkt. #12 at 26. He further indicated that the state agency psychological consultants had opined that Plaintiff's

---

[3] The undersigned notes that Dr. Tishler's assessment also precedes Plaintiff's original alleged disability onset date, as his assessments are dated March 29, 2008 and Plaintiff's original onset date used by the ALJ in this case is April 18, 2008. ECF Dkt. #12 at 16, 463.

mental impairments caused moderate limitations in her social functioning and in her concentration, persistence and pace. *Id.* He stated that he gave these assessments "some weight" and explained that the evidence showed that Plaintiff could sustain attention, concentration, persistence and pace in that she was currently working part-time delivering newspapers, she indicated that she enjoyed crafts and reading, and she could perform her daily living activities. *Id.* And while the ALJ did not mention the proposed limitation of Plaintiff to simple, repetitive one-to-two step tasks or to a static environment with few changes, he impliedly rejected such limitations when he indicated that the totality of the evidence demonstrated that Plaintiff could perform any level of exertional work and found that while she suffered from depression and anxiety, these impairments were stable with medication, although some of the residual symptoms required a limitation of work to no more than superficial contact with the public. *Id.* The ALJ had noted that Plaintiff reported to counselors and doctors that she found the medications for her depression and anxiety helpful and Plaintiff had worked full-time for years despite her life long symptoms and she reported that she was looking for full-time work but had not yet been successful. *Id.* at 22-23, 25. The ALJ also noted actions and conflicting statements that rendered Plaintiff's statements suspect, such as her admission to a counselor in 2008 that she called and lied to Children Services, stating that she was physically abusing her children, in order to obtain vouchers and financial support during Christmas. *Id.* at 22, 484. Plaintiff explained to the counselor that she did this "to be resourceful." *Id.* The ALJ further cited to Plaintiff's statement to him that she never looked for full-time work, but a report to her counselor in 2009 indicated that she was looking for full-time work. *Id.* at 25, 514-515.

In the instant case, neither Dr. Tishler nor Dr. Chambly examined Plaintiff and they merely reviewed her file. Dr. Tishler's assessment also preceded Plaintiff's onset date as used by the ALJ. The ALJ mentioned Dr. Chambly's assessment in his decision, but chose the limitations for Plaintiff's RFC that were supported by the medical and non-medical evidence, and explained his reasons for the RFC that he determined. Accordingly, the undersigned recommends that the Court find that the ALJ did not ignore the state reviewing psychologists' assessments and substantial evidence supports his RFC for Plaintiff.

## **2.    "SUPERFICIAL" INTERACTION**

Plaintiff also complains that the ALJ erroneously accepted the testimony of the VE because the VE defined the ALJ's limitation of "superficial" contact with the public and co-workers as "occasional" interaction with them, rather than defining it as a closeness of contact with the public and co-workers. ECF Dkt. #14 at 2-4, 6.  Plaintiff asserts that quantity of interaction is different than the quality of the interaction, and thus the "occasional" definition of "superficial" interaction interpreted by the VE was different than the actual definition of "superficial" interaction used by the ALJ and indicated as a limitation by Dr. Chambly. *Id.* at 3.  Plaintiff also complains that the ALJ did not rule on her counsel's objection at the hearing as to the VE's lack of response to the actual limitation of "superficial" interaction. *Id.* at 4.

The undersigned recommends that the Court find no merit to this assertion.  The undersigned first notes that Plaintiff's counsel did not present a formal objection to the VE's testimony at the ALJ hearing.  At the hearing, the majority of the questions concerning the definition of "superficial" interaction were presented in the context of a Step Five finding of identifying jobs existing in significant numbers in the national economy that the hypothetical individual with such a limitation could perform.  Plaintiff's counsel discussed the distinction between "superficial" and "occasional" interaction with the VE and the ALJ with regard to the Step Five jobs that the VE identified with a "superficial" interaction limitation.  ECF Dkt. #12 at 65-67, 73-80.  And Plaintiff's counsel asked the VE questions relating to "superficial" contact as meaning both the proximity of the contact and the frequency of the contact. *Id.* at 73-77.  The VE explained that from his professional experience, the jobs he identified could include close proximity but not necessarily communications occurring between workers. *Id.*  At the close of the hearing, Plaintiff's counsel himself indicated that:

> the word superficial doesn't really have a meaning that we can rely upon.  But the occasional and frequent standards in the DOT are applicable, however, the DOT does not classify jobs by whether interaction with the public and supervisors is occasional, frequent, never.  They just don't have that, and that's what the doctor was saying.  So, the definition of how much social interaction can be tolerated is crucial to the answer you get.  Exactly the way you ask the question is important.
>                    *       *       *
> So, since the expert has - - has told us that those are the best approximations he can make to the hypothetical question, and it's - - and these are semi-skilled work, which might have less supervision, less contact with the public, because's they're more skilled, than at least those first two occupations teach us that it's very difficult to

come up with occupations if there are any meaningful social restrictions.

*Id.* at 79-80. Plaintiff's counsel did not question the VE with regard to defining "superficial" interaction and applying it to Plaintiff's past relevant work.

Nevertheless, the ALJ responded to the closing of Plaintiff's counsel at the hearing, indicating that:

> Yes, counsel, I'll agree with the vocational expert, you bring up good points. But we also have the vocational expert drawing on his own experience beyond the DOT, and also, you know, the claimant has vocationally past relevant work in this case. That's also significant for me to take under consideration.

*Id.* at 80. Thus, the ALJ relied upon the VE's professional experience as to the interaction required for the past relevant work of Plaintiff and he relied upon the fact that Plaintiff was able to perform the past relevant jobs despite her social limitations. Since the ALJ explained his reasons for his reliance on the VE and the VE explained the qualitative and quantitative definitions of "superficial" interactions at the hearing pursuant to his professional experience, the undersigned recommends that the Court find no merit to Plaintiff's assertion. Moreover, the undersigned notes that at the hearing, the ALJ asked the VE if all of the jobs that he testified to, including Plaintiff's past relevant jobs, would remain for a hypothetical individual limited to superficial interaction with the public and co-workers and also limited to simple, routine, repetitive tasks. ECF Dkt. #12 at 63. The VE testified that all of those jobs would remain. *Id*. Thus, even if the ALJ erred in not accepting this limitation, or just forgot to include it in his decision, the result would be the same based upon the VE's testimony.

### 3. **SSR 82-62 and SSR 96-8p**

Plaintiff also asserts that the ALJ failed to comply with SSR 82-62 because he did not make the findings required by that Ruling. ECF Dkt. #14 at 7. She also complains that the ALJ failed to conduct a function-by-function comparison of those demands with her RFC as required by SSR 96-8p. *Id*. Plaintiff cites to the undersigned's decision in *Baker v. Astrue*, No. 1:11CV1096, 2012 WL 4322607, at *4 (N.D. Ohio Sept. 20, 2012), unpublished, as support. *Id*.

The undersigned recommends that the Court find no merit to Plaintiff's claim. Plaintiff presents the entirety of this argument in only four sentences of her thirteen-page merits brief. ECF Dkt. #14 at 7. She merely cites to the *Baker* decision and states that the ALJ did not "specify any

-12-

of the physical or mental demands of any of Adams' past relevant jobs either as actually performed or as generally performed." *Id*. She thereafter concludes that "legal error prevents substantial-evidence review of the step-four decision." *Id.*

The RFC assessment considers all of a claimant's medically determinable impairments, including those that are not deemed "severe" at Step Two of the sequential evaluation process. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). In determining the RFC, an ALJ evaluates "all of the relevant medical and other evidence." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). SSR 82–62 outlines the factors that an ALJ must consider in determining a claimant's ability to perform her past relevant work and provides the following in relevant part:

> The decision as to whether the claimant retains the functional capacity to perform past work which has current relevance has far-reaching implications and must be developed and explained fully in the disability decision. Since this is an important and, in some instances, a controlling issue, every effort must be made to secure evidence that resolves the issue clearly and explicitly as circumstances permit.
>
> * * *
>
> A decision that an individual is not disabled, if based on §§ 404.1520(e) and 416.920(e) of the regulations, must contain adequate rationale and findings dealing with all of the first four steps in the sequential evaluation process.
> In finding that an individual has the capacity to perform a past relevant job, the determination or decision must contain among the findings the following specific findings of fact:
>
> 1. A finding of fact as to the individual's RFC.
>
> 2. A finding of fact as to the physical and mental demands of the past job/occupation.
>
> 3. A finding of fact that the individual's RFC would permit a return to his or her past job or occupation.

SSR 82–62, at *4. Further, SSR 96–8p provides that an ALJ's RFC assessment must address a claimant's exertional and nonexertional capacities and must be based "on all the relevant evidence in the case record," which includes: a claimant's medical history, medical signs and laboratory findings, the effects of treatment, including side effects and dosages, daily activities, lay evidence, recorded observations, medical source statements, the effects of symptoms, such as pain, that are reasonably attributed to a medically determinable impairment, attempted work efforts, need for a structured living environment and work evaluations. SSR 96–8p. In the RFC assessment, an ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing

-13-

specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96–8p. The ALJ must also "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved," discuss "why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence," "consider and address medical source opinions," and "[i]f the RFC assessment conflicts with an opinion from a medical source, ... explain why the opinion was not adopted." *Id*.

As the undersigned noted in *Baker*, courts have found ALJ decisions lacking in substantial evidence as to a claimant's ability to return to her past relevant work unless the ALJ determines the demands of that work and relates those demands to the claimant's current physical abilities. *See Branch v. Astrue*, No. 4:10CV485, 2010 WL 5116948 (N.D. Ohio Dec. 9, 2010), citing *Goodwin v. Astrue*, 2010 WL 1610942, at *7 (S.D. Ohio Mar. 25, 2010); *Strittmater v. Schweiker*, 729 F.2d 507 (7th Cir. 1984); *Roy v. Sec'y of H.H.S.*, 512 F.Supp. 1245, 1259-60 (C.D. Ill. 1981). If an ALJ fails to advance such proof at Step Four or fails to show that the claimant's RFC is consistent with the demands of her past relevant work, a remand is required. *Branch*, 2010 WL 5116948, at *9.

In *Baker*, the undersigned cited to *Foxwell v. Astrue*, where the District Court adopted the Report and Recommendation of United States Magistrate Judge Vecchiarelli who recommended reversal and remand of a social security case in part because the ALJ failed to make all of the findings of fact required by SSR 82–62. Judge Vecchiarelli found that while the ALJ made findings of fact as to the claimant's RFC and found that the RFC would allow the claimant to return to her past relevant work, the ALJ failed to make findings of fact as to the physical and mental demands of the past relevant work. No. 3: 10 CV 1002, 2011 WL 4537909, at *10 (N.D.Ohio July 27, 2011), Report and Recommendation adopted by 2011 WL 4529338 (N.D.Ohio Sept.28, 2011). While other issues also required remand of the case, Judge Vecchiarelli indicated that this Step Four failure alone was a basis for remand. *Id.* at *11. The District Court adopted the Report and Recommendation. *Id.*

The undersigned recommends that the Court find that the *Baker* and *Foxworth* cases are distinguishable from the instant case. Here, just as in *Baker* and *Foxworth*, the ALJ made findings of fact as to Plaintiff's RFC and found that she could return to her past relevant work. ECF Dkt. #12

at 21-27. And similar to *Baker* and *Foxworth*, the ALJ in the instant case did not clearly state the mental and physical demands of Plaintiff's past relevant work in his decision. *Id.* However, he did discuss the physical and mental demands of Plaintiff's past relevant work with both Plaintiff and the VE at the hearing. *Id.* at 48-49, 62-66, 83-85. Moreover, Plaintiff in this case was actually working at one of the past relevant jobs identified by the ALJ during the time of her applications, the ALJ hearing, and at the time of the ALJ's decision, as she was working part-time as a newspaper delivery driver. The record therefore shows that the ALJ met the requirements for articulating the RFC determination and substantial evidence supports his determination. He reviewed the medical records as to Plaintiff's impairments and considered her testimony and credibility regarding the impairments and her reported resulting limitations. He accordingly limited Plaintiff to past relevant work that involved the limitations that he found supported by the medical and non-medical evidence, which included the job of newspaper delivery driver.

For these reasons, the undersigned recommends that the Court find that the ALJ sufficiently met SSR 82-62 and SSR 96-8p and substantial evidence supports his RFC and his determination that Plaintiff could perform her past relevant work.

### 4.  NEWSPAPER DELIVERY JOB AND PAST RELEVANT WORK

Plaintiff also complains that the ALJ erred in finding that her newspaper delivery job was past relevant work at Step Four because he determined at Step One that it was not substantial gainful activity. ECF Dkt. #14 at 6-7. She asserts that "past relevant work" must be substantial gainful activity and the ALJ's Step One finding therefore precludes his Step Four finding that her work as a newspaper delivery driver constituted past relevant work. *Id.*

For the following reasons, the undersigned recommends that even if the ALJ committed error at Step Four as to the newspaper delivery job, the other two jobs that he identified as past relevant work at Step Four rendered this error harmless. Past relevant work is defined as "work that [a claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). The social security regulations define substantial gainful activity as work that is both substantial and gainful. 20 C.F.R. §§ 404.1572, 416.972. *See also Skafica v. Sec'y of Health & Human Servs.*, 918

F.2d 179, at *1 (6th Cir.1990). Substantial work activity is defined as work that involves "doing significant physical or mental activities ." 20 C.F.R. §§ 404.1572(a), 416.972(a). Gainful work is defined as "work activity that [the claimant does] for pay or profit." 20 C.F.R. §§ 404.1572(b), 416.972(a). Generally, the fundamental consideration when evaluating whether work constitutes substantial gainful activity is the amount of earnings derived from the work performed. 20 C.F.R. §§ 404.1574(a)(1), 416.974(a)(1).

It appears that the ALJ in this case relied upon Plaintiff's earnings in determining that her work as a newspaper delivery person did not constitute substantial gainful activity at Step One. ECF Dkt. #12 at 18. He specifically stated that Plaintiff earned only approximately $500.00 to $600.00 per month for her part-time work and this activity did not therefore rise to the level of substantial gainful activity. *Id.* 20 C.F.R. §§ 404.1574(a) and 416.974(a) set forth the evaluation guides used to determine whether a claimant is able to perform substantial gainful activity. 20 C.F.R. §§ 404.1574(a), 416.974(a). That section further states that a claimant's earnings may show that she had done substantial gainful activity and that the primary consideration in making such a determination is the earnings derived from work activity. 20 C.F.R. §§ 404.1574(b)(2) and 416.974(b)(2) in relevant part provide the following guidelines:

> (B)(2)(ii) Beginning January 1, 2011, and each year thereafter, they average more than the larger of:
>
> (A) The amount for the previous year, or
>
> (B) An amount adjusted for national wage growth, calculated by multiplying $700 by the ratio of the national average wage index for the year 2 calendar years before the year for which the amount is being calculated to the national average wage index for the year 1998. We will then round the resulting amount to the next higher multiple of $10 where such amount is a multiple of $5 but not of $10 and to the nearest multiple of $10 in any other case.

20 C.F.R. §§404.1574(b)(2)(ii)(B), 416.974(b)(2)(ii)(B).

In the instant case, the ALJ determined Plaintiff's disability onset date to be April 18, 2008. ECF Dkt. #12 at 18. Applying the 2006 national wage index of 38,651.41 since it is two calendar years prior to the date being calculated, and dividing that by the average wage index for 1998 of 28,861.44 equals 1.34. Multiplying $700.00 times 1.34 equals $938.00, which rounded up equals

-16-

$940.00 per month for 2008. *See* www.socialsecurity.gov/OACT/COLA/AWI.html (yearly national wage index) and www.socialsecurity.gov/OACT/COLA/sga.html (monthly substantial gainful activity amounts). Monthly calculations for 2009, 2010, and 2011 are $980.00, $1,000.00, and $1,000.00 per month respectively. *See* www.socialsecurity.gov/OACT/COLA/sga.html. If a claimant's monthly earnings are less than the threshold required by the regulations, the ALJ "will generally consider that the earnings from [the claimant's] work as an employee . . .will show that [the claimant] ha[s] not engaged in substantial gainful activity." 20 C.F.R. §§ 404.1574(b)(3)(i), 416.974(b)(3)(i). Thus, the ALJ in this case was correct that Plaintiff's earnings of $500.00 to $600.00 per month did not constitute substantial gainful activity at Step One when looking at the factor of earnings. ECF Dkt. #12 at 18.

While finding that Plaintiff had not engaged in substantial gainful activity under Step One, the ALJ nevertheless found at Step Four that Plaintiff could return to her past relevant work as a newspaper delivery person. ECF Dkt. #12 at 18, 26. Step Four requires that the past relevant work be substantial gainful activity. This inconsistency is recognized by Defendant and glossed over as harmless. ECF Dkt. #15 at 10. Defendant maintains that although the ALJ found that Plaintiff's newspaper delivery person job did not meet the substantial gainful activity level at Step One based upon earnings, it was actually substantial and gainful. *Id*. However, Defendant offers no explanation as to why. The Court should reject this assertion as unsupported. The undersigned therefore recommends that the Court find that substantial evidence does not support the ALJ's finding that Plaintiff's work as a newspaper delivery person constituted past relevant work because he failed to reconcile his findings that said work did not constitute substantial gainful activity at Step One, but constituted substantial gainful activity at Step Four.

However, even if the ALJ erred at Step Four by finding that Plaintiff could return to her past relevant work as a newspaper delivery person, the ALJ identified the jobs of a machine tender and an assembler as past relevant work to which Plaintiff could return. ECF Dkt. #12 at 26. Plaintiff presents no argument or challenges as to these two other jobs. It is Plaintiff's burden at Step Four to show an inability to perform any past relevant work. *Allen*, 613 F.2d at 145 (6th Cir. 1980). Accordingly, the undersigned recommends that the Court find that while the ALJ failed to provide

-17-

adequate support for his Step Four finding that Plaintiff's newspaper delivery person job constituted substantial gainful activity for past relevant work, he set forth other past relevant work that met Plaintiff's RFC and Plaintiff failed to challenge or otherwise meet her burden of showing that she could not perform these jobs. ECF Dkt. #14 at 7-12. *See Casey v. Astrue*, No. 2:08-CV-095, 2009 WL 613582, at *5 (E.D. Tenn. Mar. 9, 2009), unpublished (while ALJ Step Four finding that claimant could return to past relevant work as an office cleaner was error, error was harmless, "as substantial evidence support's [sic] the ALJ's alternate conclusion that plaintiff could also return to her prior assembly work."). Accordingly, the undersigned recommends that the Court find harmless the ALJ's error at Step Four finding that Plaintiff had past relevant work as a newspaper delivery person.

### C.  STEP FIVE ARGUMENTS

Plaintiff also presents a number of alleged errors committed by the ALJ in his Step Five determination. However, the undersigned recommends that the Court decline to address these errors since the undersigned has recommended that the Court find that substantial evidence supports the ALJ's Step Four findings and he correctly found at Step Four that Plaintiff could return to her past relevant work. The ALJ was therefore not required to discuss any Step Five findings and this Court need not address the alternative Step Five findings. *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007)("If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates.").

### VI.  CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the Court AFFIRM the ALJ's decision and DISMISS Plaintiff's complaint in its entirety WITH PREJUDICE.

DATE: November 25, 2013             */s/George J. Limbert*
                                    GEORGE J. LIMBERT
                                    UNITED STATES MAGISTRATE JUDGE

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).