UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| EMMA M. ADAMS, ) | Case No. 1:12 CV 2338 |
| ) | |
| Plaintiff, ) | Judge Dan Aaron Polster |
| ) | |
| vs. ) | **MEMORANDUM OF OPINION** |
| ) | **AND ORDER** |
| CAROLYN W. COLVIN, Acting Comm'r ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |

Before the Court is the Report and Recommendation of Magistrate Judge George J. Limbert ("R&R") **(Doc #: 18)**. Therein, the Magistrate Judge recommends that the Court affirm the decision of the Administrative Law Judge ("ALJ") denying Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), and dismiss the case with prejudice. Plaintiff Emma Adams has filed Objections to the R&R **(Doc # 19)**, and Defendant, the Acting Commissioner of the Social Security Administration ("Commissioner"), has filed a Response to Plaintiff's Objections **(Doc. # 20)**. Having reviewed the record, the R&R, Plaintiff's Objections and Defendant's Response to the Objections, the Court **ADOPTS** the R&R to the extent that it is consistent with this opinion.

I.

Plaintiff filed applications for DIB and SSI on two separate occasions. On September 20, 2007, Plaintiff filed applications for DIB and SSI, and on April 17, 2008 the Social Security

1

Administration ("SSA") denied her applications. Plaintiff did not appeal the SSA's determination that she was not disabled. On October 5, 2009, Plaintiff filed applications for DIB and SSI, alleging a disability onset date of April 18, 2008, due to agoraphobia, claustrophobia, depression and being suicidal. The SSA denied Plaintiff"s application initially and on reconsideration. After Plaintiff's application was denied, she requested a hearing before an ALJ. The hearing took place on November 29, 2011, and featured testimony from Plaintiff and a vocational expert. On December 16, 2011, the ALJ issued a decision denying the Plaintiff benefits. Plaintiff filed a request for review of the decision, but the Appeals Council denied the request. Plaintiff then filed the instant action on September 18, 2012, seeking review of the ALJ's decision.

On November 25, 2013, Magistrate Judge Limbert issued an R&R in which he recommends that the Court affirm the ALJ's decision and dismiss Plaintiff's case with prejudice. Plaintiff filed objections on December 12, 2013, setting forth three objections[1] to the R&R: 1) the ALJ ignored the opinions of the two non-examining psychologists; 2) the vocational expert incorrectly interpreted the ALJ's limitation of "superficial" interaction to mean "occasional"

---

[1]In a footnote on the first page of Plaintiff's brief on the merits, she mentions that at the disability hearing she requested that the ALJ reopen the initial determination of her prior applications, and that the ALJ failed to rule on this request. (Doc. # 19 at fn. 1). Although neither party raised this issue in briefing, the R&R recommends that this Court find that it lacks jurisdiction to review the ALJ's implied decision not to reopen her prior applications. Plaintiff asserts that Judge Limbert should not have addressed this issue because it is not relevant or properly before the Court. (Doc. # 19 at 1). Plaintiff asks that the Court not rule on this issue so that on remand an administrative law judge will have an opportunity to consider whether the ALJ should have ruled on this issue. The Court finds that the issue of whether the ALJ should have ruled on Plaintiff's request to reopen her prior applications is not properly before the Court, and, therefore, declines to rule on this issue. However, because the Court is not remanding the case, Plaintiff's request is moot.

2

interaction and; 3) the ALJ did not make the necessary findings of fact regarding Plaintiff's past relevant work.

## II.

A reviewing court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record. 42 U.S.C. § 405(g); *Wright v. Massanari,* 321 F.3d 611, 614 (6th Cir. 2003). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992) (quoting *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). A court "may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

### 1. Psychological Assessments

Plaintiff argues that the ALJ, in determining Plaintiff's RFC, ignored the opinions of two State agency non-examining psychologists. The R& R recommends that the Court find that the ALJ did not ignore the opinions of the State agency non-examining psychologists, and that substantial evidence supports the ALJ's RFC. Plaintiff's Objections raises several reasons why this Court should not adopt Judge Limbert's recommendation.

First, Plaintiff asserts that Judge Limbert erred in finding that the ALJ adequately explained the weight he gave to the two State agency non-examining psychologists, as required by the SSA's rules and regulations. (Doc. # 19 at 2-3). The SSA's regulations set forth detailed rules that administrative law judges must abide by when evaluating medical opinions of treating

3

sources, examining sources and nonexamining sources, including State agency medical and psychological consultants.  *See generally* 20 CFR 416.927 and Social Security Ruling ("SSR") 96-6p.  While administrative law judges are not bound by these opinions, they may not ignore them and must "explain the weight" they gave these opinions in their decisions. 20 CFR 416.927(e)(2)(ii); see also SSR 96-6p.

Two State agency psychological consultants, Drs. Tishler and Chambly, reviewed the evidence in Plaintiff's file and prepared an assessment of Plaintiff's ability to perform work related activities.  On March 29, 2008, Dr. Carl Tishler, Ph.D completed a Psychiatric Review Technique Assessment form ("Psychiatric Review Form") and a Mental Residual Capacity Function form ("RFC Form").  (Doc #: 12, Transcript of Proceedings Before Social Security Administration (hereinafter "Tr."), at 459-476.).  Dr. Tishler's assessment of Plaintiff's mental impairments concern the period between January 3, 2007 and March 25, 2008.  Id. at 463.  As an initial matter, the Court notes that Dr. Tishler's assessment proceeds Plaintiff's alleged disability onset date of April 18, 2008.  Generally, an ALJ only considers evidence from the alleged disability onset date through the date last insured.  *Bacon v. Comm'r of Soc. Sec*. 2012 WL 3112374, at * 8 (N.D. Ohio, May 30, 2012).  In her Objections, Plaintiff contends that the Court should consider Dr. Tishler's assessment "as evidence of a claimant's condition twenty days before the alleged onset date is certainly relevant."  (Doc. # 19 at 6-7).  The Court finds that Dr. Tishler's assessment is relevant for that purpose, particularly as it is consistent with Dr. Alice Chambly's assessment of Plaintiff's mental impairments between April 18, 2008 and January 21, 2010.

Under the narrative section of the RFC form, Dr. Tishler opined that Plaintiff  "maintains

4

the ability to complete simple, routine one-to-two step tasks" and that she "should only be required to have occasional interaction with coworkers or the public." (Tr. at 461). On January 21, 2010, Dr. Alice Chambly, Ph.D completed the Psychiatric Review Form and the RFC Form; Dr. Chambly's assessment of Plaintiff's mental impairments concern the period between April 18, 2008 and January 21, 2010. (Tr. at 563-580). Under the narrative section of the RFC form, Dr. Chambly opined that Plaintiff "is limited to simple repetitive tasks with limited contact with the general public and infrequent superficial contact with co-workers in a static environment with few changes." (Id. at 565). The Psychiatric Review Form includes a section where a medical health professional can opine as to the degree to which an individual's impairments impacts her "functional limitations." (Tr. at 577). The form lists four categories of "functional limitations": restriction in daily living activities; restriction in social functioning; difficulties maintaining concentration, persistence or pace; and episodes of decompensation. Drs. Tishler and Chambly agree as to the degree to which Plaintiff's mental impairments impact her functional limitations. Drs. Tishler and Chambly opined that Plaintiff's mental impairments mildly restrict her daily living activities; moderately restrict her social functioning; caused moderate difficulties in maintaining concentration, persistence or pace; and resulted in no episodes of decompensation. (Tr. at 473 and 577).

  The ALJ determined that Plaintiff has the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant cannot perform tasks requiring more than superficial interaction with the public or coworkers. (Tr. at 21). In arriving at this conclusion, the ALJ summarized Plaintiff's mental health history and portions of her testimony from the hearing. (Tr. at 21-26). The ALJ determined that the Plaintiff's mental

5

impairments mildly restrict her daily activities; cause mild difficulties in concentration, persistence, and pace; and cause moderate difficulties in social functioning. He determined that Plaintiff has not suffered from any episode of decompensation. (Tr. at 25). The ALJ concluded that "overall, the claimant's impairments do not appear to prevent her from engaging in work activity." (Id.). In finding that the Plaintiff's mental impairments only mildly restrict her concentration, persistence and pace, the ALJ noted that the Plaintiff "reported reading a lot and performing crafts such as crocheting." (Id.).

The ALJ's decision does not mention Dr. Chambly or Tishler by name, however, it does refer to these opinions:

> The State agency psychological consultants opined that the claimant's mental impairments caused moderate limitations in her social functioning and concentration persistence and pace (Exhibits 12 F, 13F). Their findings are given some weight; however, the evidence indicates the claimant has the ability to sustain attention, concentration, persistence and pace, as demonstrated by her current work activity, her enjoyment of readings and crafts, and her ability to perform activities of daily living with no alleged difficulties in staying focused and on task.

(Tr. at 26). Plaintiff argues that the ALJ erred because he did not explain his reasons for rejecting Dr. Tishler's proposed work limitation of Plaintiff to simple, routine one-to-two step tasks or Dr. Chambly's limitation of Plaintiff to simple repetitive tasks in a static environment with few changes. Judge Limbert found that because the ALJ implicitly rejected these proposed limitations, he complied with the rules requiring him to "explain the weight" he gave to the psychologists' opinions. (Doc. # 18 at 10). The Court agrees.

The ALJ explained that while he was giving Drs. Tishler and Chambly's opinions "some weight" he did not agree that Plaintiff has moderate difficulties in concentration, persistence and pace. (Tr. at 26). The ALJ found that Plaintiff has the ability to sustain

6

attention, concentration, persistence and pace.  Id.  In support of this finding, the ALJ cited Plaintiff's current work activity delivering newspapers, her enjoyment of reading and crafts and her ability to perform daily living activities with no alleged difficulties in staying focused and on task. ( Id.).  Therefore, in finding that the Plaintiff has the ability to sustain attention, concentration, persistence and pace, the ALJ implicitly rejected the proposed limitations of Plaintiff to simple, repetitive one-to-two step tasks, or to a static environment with few changes.  While the ALJ may have not specifically mentioned all of  Drs. Tishler and Chambly's findings, he did explain the weight he gave their opinions, and, in doing so, he implicitly rejected those findings that he did not mention.  *See Thacker v. Comm of Soc. Sec.*, 99 Fed. Apx. 661 (unpublished) (finding that the ALJ met the requirements of 96-6p, although his discussion was "brief and unspecific").

Second, Plaintiff argues that ALJs are bound by a "clear procedural requirement" when discounting the opinions of a State agency reviewing psychologist, citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  (Doc. # 19 at 4-5).  In a related argument, Plaintiff asserts that the R&R does not address the contention that "implied rejection" does not satisfy the "clear procedural requirement" to explain in the decision the weight given to the opinion of a State agency psychologist.   (Id. at 6).  However, *Wilson* requires reversal when an ALJ ignores a treating physician's opinion and does not provide good reasons for doing so.  *Bass v. McMahon*, 499 F. 3d 506, 512 (6th Cir. 2007) (citing *Wilson*, 378 F.3d at 546).  Plaintiff has not cited any case law wherein a court applied Wilson's "clear procedural requirement" to the rules requiring ALJs to explain the weight they gave to the opinion of a nonexamining doctor.

Third, Plaintiff asserts that the R&R assumes that the ALJ considered and rejected Drs.

7

Tishler and Chambly's opinions, when it is not clear from the record that the ALJ actually noticed their opinions. (Doc. # 19 at 5). In support, Plaintiff asserts that the ALJ did not cite to Dr. Tishler's opinions. While the ALJ's opinion did not include a citation to Dr. Tishler's opinions, the language of the ALJ makes it clear that he was referring to the opinions of both Dr. Tishler and Dr. Chambly. For instance, the ALJ refers to the opinions of the "State agency psychological consultants" and says that he is giving "their findings" some weight. In addition, both Drs. Tishler and Chambly made the same finding in regards to Plaintiff's difficulties with concentration, persistence and pace. Therefore, the fact that the ALJ did not include a citation to Dr. Tishler's opinions does not mean that he "did not notice" his opinions. Plaintiff also argues that the ALJ did not notice the doctors' opinions because he does not mention the doctors' narrative opinions, and, instead, only "mention[s] the 'moderate' mental limitations that were found in the agency's check-box forms from Dr. Chambly." (Id.). As discussed in detail above, the Court finds that the ALJ fully examined the doctors' opinions and implicitly rejected the proposed limitations in the doctors' narrative opinions when he explained his reasons for finding that the Plaintiff has the ability to sustain attention, concentration, persistence and pace.

Fourth, Plaintiff argues that it is "reversible error for the ALJ to rely upon the check-boxes in Section I of the State-agency psychologist's opinions and on the check-boxes in the Psychiatric Review Technique form, yet ignore the narrative portion, which the agency insists is the only portion that counts." (Doc. # 19 at 5). In support of his argument, Plaintiff cites *Hall v. Comm'r of Soc. Sec.*, No. 1:12cv1764 (N.D. Ohio Aug. 26, 2013). Plaintiff's reliance on *Hall* is misplaced. In *Hall*, the Court held that because the ALJ specifically relied on the "Summary Conclusions" section of the RFC form (the check-boxes in Section I), the

8

Commissioner could not, on appeal, rely on the narrative portion to argue that the ALJ's RFC is supported by substantial evidence. *Hall* does not say that an ALJ must rely on both the check-boxes and the narrative section, or, that an ALJ must explicitly acknowledge the narrative section in explaining the weight he gave a doctor's opinions.

Finally, Plaintiff asserts that the R&R "defends the ALJ's lack of explanation by reciting reasons that the ALJ questioned claimant's credibility" and argues that "it is difficult to see how credibility issues are relevant to the ALJ's duty to articulate." (Doc. # 19 at 7). While credibility findings may not be relevant to an ALJ's duty to explain the weight he gave to a doctor's opinions, credibility findings are relevant in determining how much weight an ALJ should give a claimant's statements regarding her symptoms. SSR 96-7p. The ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible to the extent that they were inconsistent with the RFC assessment of the Plaintiff. (Tr. at 25). In support of his credibility determination, the ALJ cited portions of Plaintiff 's testimony that are inconsistent with the record. (Id.). For instance, the claimant testified that her condition has gotten worse since 2007, however, the record shows that in 2007 she was able to get a new janitorial job and by 2008 her symptoms were stable with medication. (Id.). The R&R mentions the ALJ's credibility finding, however, it does not purport to do so as a means of "defending the ALJ's lack of explanation." (Doc. # 18 at 10). As discussed above, Judge Limbert found that the ALJ did in fact explain his reasons for rejecting the doctors' assessments. (Id.).

**2. "Superficial" Interaction**

At the disability hearing, the ALJ asked the vocational expert ("VE") if an individual who has the RFC to perform work at any exertional level but could not perform tasks requiring more than superficial interaction with the public or coworkers could perform any of Plaintiff's past relevant jobs.  (Tr. at 61).  The VE responded that such an individual could perform any of the Plaintiff's past relevant jobs, except for Plaintiff's past job as a janitor.  (Id.).  The Plaintiff's attorney asked the VE to define "superficial" as used by the ALJ in his hypothetical question. (Id. at 65).  The VE responded that, based on his professional experience, he understood "superficial" to mean "occasional."  (Id. at 66).

The Plaintiff asserts that because Plaintiff's mental impairments restrict the *type* of interactions that she can have, in addition to the *frequency* of those interactions, the VE erred when he defined  "superficial" to mean only "occasional."  Plaintiff argues that the ALJ's hypothetical question to the VE is incomplete because he relied on the VE's erroneous definition of "superficial."  (Doc. 18 at 11-12).  Judge Limbert rejected the Plaintiff's argument, relying, in part, on the fact that Plaintiff's attorney failed to make a formal objection to the VE's testimony at the hearing.  (Id.).  In her Objections, Plaintiff asserts that "there is no authority that formal objections are necessary."  (Doc. 19 at 8).  However, "the Sixth Circuit, along with other courts across the country, have generally recognized that a claimant's failure to object to testimony offered by a vocational expert, at the time of the administrative proceeding, waives the claimant's right to raise such issues in the district court."  *Harris v. Comm'r of Soc. Sec.,* 2012 WL 4434078,  at * 3 (N.D. Ohio Sept.24, 2012) (citing *Hammond v. Chater*, 1997 WL 338719, at *3 (6th Cir. June 18, 1997) (finding the plaintiff's failure to raise objections to the VE's testimony

waived the argument on appeal) (other citations omitted).

### 3. Past Relevant Work

The ALJ found that the Plaintiff is capable of performing past relevant work as a machine tender, assembler and a newspaper delivery person. (Tr. at 26). At the time of the disability hearing and the ALJ's decision, Plaintiff was working part-time delivering newspapers. The SSA's rules define past relevant work as work that constitutes "substantial gainful activity." However, at Step One of the disability determination, the ALJ found that based upon Plaintiff's earnings, her job as a newspaper delivery person did not constitute "substantial gainful activity." The ALJ did not address how Plaintiffs's work as a newspaper delivery person could constitutes substantial gainful activity at Step Four, but not at Step One. As a result, Judge Limbert found that substantial evidence does not support the ALJ's finding that Plaintiff could work as a newspaper delivery person. (Doc. # 18 at 17). The Court agrees with Judge Limbert and finds that the ALJ's error is harmless because he also identified the jobs of machine tender and assembler as past relevant work to which Plaintiff could return.

Plaintiff argues that the ALJ erred in determining that Plaintiff could perform her past relevant work because the ALJ failed to make specific findings of fact required by SSR 82-62 and 96-8p. SSR 82-62 provides that in finding that an individual has the capacity to perform a past relevant job, the determination must contain the following findings of fact: (1) a finding of fact as to the individual's RFC; (2) a finding of fact as to the physical and mental demands of the claimant's past work at issue; and (3) a finding of fact that the individual's RFC would permit a return to his or her past work.

Here, the ALJ found that " in comparing the claimant's residual functional capacity with

the physical and mental demands of this work, the undersigned finds that the claimant is able to perform her past work as actually and generally performed." (Tr. at 21). Judge Limbert found that while the ALJ did not clearly state the mental and physical demands of Plaintiff's past relevant work in his decision, he addressed them at the hearing. ( Doc. # 18 at 15). In her Objections, Plaintiff argues that "the decision itself must contain the analysis." (Doc. # 19 at 8). However, courts have looked to testimony from the disability hearing to determine whether the ALJ made the required findings of fact as to the physical and mental demands of claimant's past relevant work. See *Branch v. Astrue*, 2010 WL 5116948, at * 9 (citing testimony from the hearing to establish that the ALJ complied with the requirements of SSR 82-62).

Accordingly, for the foregoing reasons, the Court hereby ADOPTS the R&R to the extent that it is consistent with this opinion..

**IT IS SO ORDERED.**

 **/s/Dan Aaron Polster January 16, 2013**
**Dan Aaron Polster**
**United States District Judge**